STATE OF NORTH CAROLINA v. BYRON WHITE, DEFENDANT

No. COA02-1641

(Filed 20 January 2004)

**1. Sexual Offenses— sex offender registration requirements—knowledge—instruction**

The trial court did not err in a case concerning a failure to comply with the sex offender registration requirements under N.C.G.S. § 14-208.11 by failing to instruct the jury that the State was required to prove defendant's knowledge of the requirements, because: (1) our Court of Appeals has already held that the State is not required to prove knowledge under N.C.G.S. § 14-208.11; and (2) the statute's legislative history also confirms that the legislature intended to create a strict liability offense.

**2. Constitutional Law— due process—sex offender registration requirements—knowledge**

Due process did not mandate that the trial court had to instruct the jury that the State was required to prove that defendant knew of his duty to register in a case concerning a failure to comply with the sex offender registration requirements under N.C.G.S. § 14-208.11, because: (1) the notice provisions of the registration act remove the statute from due process attacks under ordinary circumstances; (2) an oral explanation of the registration requirements to a defendant by a member of a sheriff's department provides actual knowledge enough to satisfy due process requirements for any reasonable and prudent man, and a detective in this case testified that he advised defendant of the registration requirements when defendant initially registered with the sheriff's department; and (3) defendant has not argued that he was incompetent or that the standards for a reasonable and prudent man are otherwise inapplicable to him.

**3. Constitutional Law— ex post facto laws—sex offender registration requirements**

The trial court did not err by failing to dismiss the charge of failure to comply with the sex offender registration requirements under N.C.G.S. § 14-208.11 on the basis that it was a violation of the constitutional prohibitions against ex post facto laws, because: (1) the United States Supreme Court has recently ruled that statutes such as N.C.G.S. § 14-208.11 are not impermissible

ex post facto laws; (2) the fact that the public disclosure provisions are contained in the same portion of the criminal code as the registration provisions does not justify a conclusion that the General Assembly intended the legislation to be punitive rather than a civil regulatory scheme; (3) any stigma flowing from the registration requirements is not due to public shaming, but arises from the dissemination of accurate information which is already public; (4) prior offenders are free to change jobs or move wherever they choose subject only to the indirect restraint of the registration requirements; (5) to hold that the mere presence of a deterrent purpose renders such sanctions criminal would severely undermine the government's ability to engage in effective regulation; (6) the Act's rational connection to a nonpunitive purpose is a most significant factor in the determination that the statute's effects are not punitive; (7) the penalty imposed for a violation of the registration requirements is irrelevant to the question of whether the requirements themselves constitute an unconstitutional ex post facto law; (8) the requirements of registering for ten years are not excessive in light of the General Assembly's nonpunitive objective; and (9) the General Assembly amended N.C.G.S. § 14-208.11 in 1998 to change the penalty for violation of the registration requirements from a Class 3 misdemeanor for a first conviction to a Class F felony, and defendant violated the requirements in 2001 which was three years after the change in the law.

Appeal by defendant from judgment entered 15 August 2002 by Judge Russell J. Lanier, Jr., in New Hanover County Superior Court. Heard in the Court of Appeals 13 October 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Amy L. Yonowitz, for the State.*

*Duncan B. McCormick, for the defendant-appellant.*

GEER, Judge.

Defendant Byron White appeals from his conviction for failure to comply with the sex offender registration requirements set out in N.C. Gen. Stat. § 14-208.11 (2003). Defendant contends that the trial court erred in failing to instruct the jury that the State was required to prove defendant's knowledge of the requirements and that the trial court erred in failing to dismiss the charges as a violation of the con-

stitutional prohibitions against *ex post facto* laws. Because (1) this Court already has held that the State is not required to prove knowledge under N.C. Gen. Stat. § 14-208.11; (2) that statute does not, as applied to defendant, violate due process; and (3) the United States Supreme Court has recently ruled, *Smith v. Doe*, 538 U.S. 84, 155 L. Ed. 2d 164, 123 S. Ct. 1140 (2003), that statutes such as N.C. Gen. Stat. § 14-208.11 are not impermissible *ex post facto* laws, we find no error.

---

In 1995, North Carolina enacted the Amy Jackson Law, N.C. Gen. Stat. § 14-208.5 (2003) *et seq.* ("Article 27A"), requiring individuals convicted of certain sex-related offenses to register their addresses and other information with law enforcement agencies. The stated purpose of the law is to curtail recidivism because "sex offenders often pose a high risk of engaging in sex offenses even after being released from incarceration or commitment and . . . protection of the public from sex offenders is of paramount governmental interest." N.C. Gen. Stat. § 14-208.5.

Article 27A applies to all offenders convicted on or after 1 January 1996 and to all prior offenders released from prison on or after that date. 1995 N.C. Sess. Laws ch. 545, § 3. Under N.C. Gen. Stat. § 14-208.7(a) (2003), "[a] person who is a State resident and who has a reportable conviction shall be required to maintain registration with the sheriff of the county where the person resides." North Carolina residents who are released from a penal institution must register with the sheriff of the county in which the offender resides "[w]ithin 10 days of release from a penal institution . . . ." N.C. Gen. Stat. § 14-208.7(a)(1). Registration must be maintained for ten years following release. N.C. Gen. Stat. § 14-208.7(a). Whenever a person required to register "changes address, the person shall provide written notice of the new address not later than the tenth day after the change to the sheriff of the county with whom the person had last registered." N.C. Gen. Stat. § 14-208.9(a) (2003).

Before a convicted sex offender is released from a North Carolina penal institution, an official of the institution must notify him or her of the duty to register in the county where the person intends to reside. N.C. Gen. Stat. § 14-208.8(a)(1) (2003). The person required to register must sign a statement to verify receipt of the information or, if the person refuses to sign, the official must certify that the person was notified of his or her duty to register. *Id.*

In addition, each year on the anniversary of the person's initial registration date, the Division of Criminal Information, which maintains a central registry, is required to send a letter to the registrant at the last reported address to verify his or her address. N.C. Gen. Stat. § 14-208.9A(1) (2003). If within ten days of receipt the registrant fails to sign and return the letter verifying his or her current address, the sheriff's department must make a reasonable attempt to determine whether the person is residing at the registered address. N.C. Gen. Stat. § 14-208.9A(4) (2003).

At present, a person who violates the registration requirements is guilty of a Class F felony. N.C. Gen. Stat. § 14-208.11 (2003). Until 1 April 1998, however, "[a] person . . . who, knowingly and with the intent to violate the provisions of this Article, fail[ed] to register" was guilty of a Class 3 misdemeanor for a first conviction and a Class I felony for a subsequent conviction. N.C. Gen. Stat. § 14-208.11(a) (1996 Cum. Supp.).

## Facts

In April 1996, defendant pled guilty to committing indecent liberties with a minor in 1995. He was sentenced to prison and released 19 March 1997. Defendant registered in New Hanover County on 21 March 1997, reporting his residence as an address in Wilmington. Detective Tim Karp of the New Hanover County Sheriff's Department testified he advised defendant at that time of the requirement that he notify the department within ten days of any address change and of the fact that failure to do so would constitute an offense for which he would be arrested.

On 26 April 1999, defendant provided the sheriff's department with notice of a change in his address. On 16 November 1999, the Division of Criminal Information sent a letter to defendant to verify his then current address. The sheriff's department subsequently received notification that defendant had not responded to the letter. Detective Karp recorded in department records that defendant's address was unknown and contacted defendant's probation officer.

On 14 March 2000, the sheriff's department was again notified that defendant had not responded to a letter seeking verification of his residence. Detective Karp again recorded defendant's address as being unknown. On 11 May 2001, defendant came to the sheriff's department to report a new address in Wilmington. Defendant was living at that address with his girlfriend, Shante Rowell. Ms. Rowell

testified that defendant had told her that he was required to sign papers showing a change of address every time he moved. Ms. Rowell and defendant subsequently moved to another address and defendant notified the sheriff's department of his new address.

In April 2001, defendant's relationship with Ms. Rowell ended and he moved out of her home. He failed to report his new address to the sheriff's department. On 11 July 2001, Ms. Rowell called the sheriff's department to report that defendant was no longer living at her home and on 12 July 2001, Ms. Rowell signed an affidavit verifying that fact. On 2 August 2001, a warrant was issued for defendant's arrest.

Defendant was indicted on 1 April 2002 for violating N.C. Gen. Stat. § 14-208.11 by failing to notify the sheriff of his change of address. At trial, defendant's attorney moved to dismiss the charge on the grounds that the State had failed to prove "the necessary element of actual knowledge of the duty to register," that the statute violated state and federal constitutional guarantees of due process, and that the statute constituted an unconstitutional *ex post facto* law. The trial court denied the motion.

Defendant's attorney subsequently requested that the court instruct the jury that "[t]he State is required to prove as an element to the offense that the Defendant had actual knowledge of the duty to register." In response to this request, the trial judge stated that he believed (incorrectly) that an "actual knowledge" requirement was included in the pattern jury instruction and that he would give the pattern instruction. Following the court's reading of the jury instructions, counsel for defendant pointed out that there had been no instruction on knowledge. The trial court decided to abide by the pattern instruction as written.

During deliberations, the jury submitted the following question to the trial court: "Should the jury consider whether the defendant knew he needed to register a change of address within 10 days or other specified times?" The judge responded,

> The answer to that is yes, and in determining what he knew, you may examine his conduct before and after his, you know, conviction. Remember the instruction I gave you on circumstantial evidence. Okay, does that answer your question?

When a juror asked the judge to repeat his answer, the judge responded, in pertinent part,

I said, yes, you may, you know, it's sort of hard to expect to convict somebody of a felony without him knowing what his responsibilities are. However, you may determine what he knew by the conduct that he exhibited . . . .

Following the jury's verdict of guilty, the trial court found as a mitigating factor that defendant was suffering from a mental condition that was insufficient to constitute a defense but significantly reduced his culpability for the offense. The court found no aggravating factors. Defendant was sentenced to 20 to 24 months in prison.

I

[1] Although defendant acknowledges that N.C. Gen. Stat. § 14-208.11(a) does not expressly require the State to prove knowledge or intent, he argues that the General Assembly in fact intended such a requirement. Not only has this Court already held otherwise, the statute's legislative history also confirms that the legislature intended to create a strict liability offense.

N.C. Gen. Stat. § 14-208.11(a)(2) provides in pertinent part:

(a) A person required by this Article to register who does any of the following is guilty of a Class F felony:

. . . .

(2) Fails to notify the last registering sheriff of a change of address.

Thus, the statute on its face does not include any *mens rea* requirement. Based on this language, this Court already has held that knowledge is not an element of the offense: "[W]e note that the statute has no requirement of knowledge or intent, so as to require that the State prove either defendant knew he was in violation of or intended to violate the statute when he failed to register his change of address." *State v. Young*, 140 N.C. App. 1, 8, 535 S.E.2d 380, 384 (2000), *disc. review improvidently allowed*, 354 N.C. 213, 552 S.E.2d 142 (2001). *See also State v. Holmes*, 149 N.C. App. 572, 577, 562 S.E.2d 26, 30 (2002) ("To meet its burden under § 14-208.11(a)(2), the State must prove that: 1) the defendant is a sex offender who is required to register; and 2) that defendant failed to notify the last registering sheriff of a change of address.")

Despite *Young* and *Holmes*, defendant contends that the extensive notification procedures set forth in Article 27A, coupled with the

classification of a violation of the registration requirements as a felony, N.C. Gen. Stat. § 14-208.11, are sufficient to prove the legislature did not intend that the statute provide for a strict liability offense. We may not, however, revisit *Young* and *Holmes*.

The legislative history of N.C. Gen. Stat. § 14-208.11 also refutes defendant's argument. Prior to 1997, N.C. Gen. Stat. § 14-208.11 included a *mens rea* element, providing that only offenders "who knowingly and with intent to violate" the provision were subject to conviction. N.C. Gen. Stat. § 14-208.11(a) (1995). The legislature amended the statute in 1997 to remove this language. 1997 N.C. Sess. Laws ch. 516. When the General Assembly amends a statute, "the presumption is that the legislature intended to change the law." *State ex rel. Utilities Comm'n. v. Public Service Co.*, 307 N.C. 474, 480, 299 S.E.2d 425, 429 (1983). Thus, by deleting the specific intent requirement, the General Assembly expressed its intent to make N.C. Gen. Stat. § 14-208.11 a strict liability offense. We hold as a matter of statutory construction that N.C. Gen. Stat. § 14-208.11 does not require a showing of knowledge or intent.

## II

**[2]** Alternatively, defendant argues that due process mandated that the State prove defendant knew of his duty to register. This Court recognized in Young that "although ignorance of the law is no excuse, and the statute at issue does not require the State to prove intent, due process requires that defendant have knowledge, actual or constructive, of the statutory requirements before he can be charged with its violation." 140 N.C. App. at 12, 535 S.E.2d at 386 (emphasis original).

Although defendant assigned error to the trial court's failure to grant his motion to dismiss based on his constitutional right to due process, he has abandoned that argument by not addressing it in his brief. N.C.R. App. P. 28(b)(6) ("Assignments of error not set out in the appellant's brief . . . will be taken as abandoned."). Defendant limits his argument on appeal to the question whether the trial court erred in failing to give his requested instruction. "[A] court must give a requested instruction if it is a correct statement of the law and is supported by the evidence." *State v. Cheek*, 351 N.C. 48, 73, 520 S.E.2d 545, 560 (1999), *cert. denied*, 530 U.S. 1245, 147 L. Ed. 2d 965, 120 S. Ct. 2694 (2000).

In *Young*, this Court held that the notice provisions of the registration act (N.C. Gen. Stat. §§ 14-208.8 and 14-208.11) remove the

statute from due process attacks "[u]nder ordinary circumstances." 140 N.C. App. at 8, 535 S.E.2d at 384. The Court also held that an oral explanation of the registration requirements to a defendant by a member of a sheriff's department provides " 'actual knowledge' enough to satisfy due process requirements for any reasonable and prudent man." *Id.* at 9, 535 S.E.2d at 385.

Here, Detective Karp testified that he advised defendant of the registration requirements when defendant initially registered with the New Hanover County Sheriff's Department. Defendant offered no contrary evidence. Under *Young*, this undisputed evidence was sufficient to satisfy due process for a reasonable and prudent man. Defendant has not argued that he was incompetent or that the standards for a reasonable and prudent man are otherwise inapplicable to him. *See id.* at 10, 535 S.E.2d at 385 (N.C. Gen. Stat. §§ 14-208.8 and 14-208.11 and oral notice from a sheriff's department are insufficient to provide notice for an incompetent sex offender). Given the constructive notice supplied by N.C. Gen. Stat. §§ 14-208.8 and 14-208.11, the actual notice supplied by Detective Karp, and the absence of any evidence of a lack of actual knowledge, the trial court was not obligated to give defendant's requested instruction on knowledge. *See also Holmes*, 149 N.C. App. at 577, 562 S.E.2d at 30 (when the evidence established that defendant, who was never adjudicated incompetent, had signed a notice advising him of the registration requirements, N.C. Gen. Stat. § 14-208.11 was "not unconstitutional as applied to defendant and *Young* is not applicable"); *Hatton v. Bonner*, 346 F.3d 938, 951 (9th Cir. 2003) (denying post-conviction relief when defendant presented no evidence that he lacked actual knowledge of registration requirement, did not contend that he lacked notice or misunderstood the requirement, and repeatedly registered until he moved to another state).

We need not reach the question whether the trial judge improperly expressed an opinion regarding defendant's knowledge during his charge to the jury. Since there was no requirement that the jury consider defendant's knowledge, the additional instruction, even if in error, was harmless to defendant. These assignments of error are overruled.

III

[3] The United States and the North Carolina Constitutions prohibit the enactment of *ex post facto* laws. *See* U.S. Const. art. I, § 10 ("No state shall . . . pass any bill of attainder, *ex post facto* law, or law

impairing the obligation of contracts . . . ."); N.C. Const. art. I, § 16 ("Retrospective laws, punishing acts committed before the existence of such laws and by them only declared criminal, are oppressive, unjust, and incompatible with liberty, and therefore no *ex post facto* law shall be enacted."). The prohibition against the enactment of *ex post facto* laws applies to:

> "1st. Every law that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action. 2d. Every law that *aggravates a crime*, or makes it *greater* than it was, when committed. 3d. Every law that *changes the punishment*, and inflicts a *greater punishment*, than the law annexed to the crime, when committed. 4th. Every law that alters the *legal* rules of *evidence*, and receives less, or different, testimony, than the law required at the time of the commission of the offence, *in order to convict the offender.*"

*State v. Wiley*, 355 N.C. 592, 625, 565 S.E.2d 22, 45 (2002) (quoting *Collins v. Youngblood*, 497 U.S. 37, 42, 111 L. Ed. 2d 30, 38-39, 110 S. Ct. 2715 (1990)) (emphasis original), *cert. denied*, 537 U.S. 1117, 154 L. Ed. 2d 795, 123 S. Ct. 882 (2003). "Because both the federal and state constitutional *ex post facto* provisions are evaluated under the same definition, we analyze defendant's state and federal constitutional contentions jointly." *Id.*

Defendant contends that the registration requirements set forth in N.C. Gen. Stat. § 14-208.5 *et seq.* constitute an *ex post facto* law because those requirements retroactively increase the punishment imposed as a result of his conviction in 1996 of the crime of indecent liberties. Defendant concedes, however, that the U.S. Supreme Court considered and rejected most of his arguments in *Smith v. Doe*, 538 U.S. 84, 155 L. Ed. 2d 164, 123 S. Ct. 1140 (2003), which held that Alaska's sex-offender registration law does not violate the *ex post facto* prohibition of the federal Constitution because the law established a civil, non-punitive regulatory regime intended to protect the public. As explained in greater detail below, we can find no meaningful distinction between Alaska's registration law and North Carolina's Article 27A and, therefore, hold that North Carolina's statute is not an unconstitutional *ex post facto* law.

In determining whether Alaska's sex-offender registration law violated the *ex post facto* clause, the Supreme Court noted that the framework for that inquiry is well established:

We must "ascertain whether the legislature meant the statute to establish 'civil' proceedings." *Kansas v. Hendricks*, 521 U.S. 346, 361, 138 L. Ed. 2d 501, 117 S. Ct. 2072 (1997). If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is " 'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.' " *Ibid.* (quoting *United States v. Ward*, 448 U.S. 242, 248-49, 65 L. Ed. 2d 742, 100 S. Ct. 2636 (1980)).

*Smith*, 538 U.S. at 92, 155 L. Ed. 2d at 176, 123 S. Ct. at 1146-47. In summary, a court looks first at the intended purpose of the law. If the declared purpose was to enact a civil regulatory scheme, then the court determines whether either the purpose or effect is so punitive as to negate any intent to deem the scheme civil. In making this determination, " 'only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty[.]' " *Id.* (quoting *Hudson v. United States*, 522 U.S. 93, 100, 139 L. Ed. 2d 450, 459, 118 S. Ct. 488, 493 (1997)).

A.  The Legislature's Intended Purpose

To determine the intent of the Alaska legislature in enacting its registration law, the Supreme Court first considered the statute's text and its structure. The Court noted that the Alaska legislature expressed its objective in the statutory text itself with the legislature (1) expressly finding that sex offenders pose a high risk of re-offending, (2) identifying the primary governmental interest as protecting the public from sex offenders, and (3) determining that release of information about sex offenders to public agencies and the public will assist in protecting public safety. *Id.* at 93, 155 L. Ed. 2d at 177, 123 S. Ct. at 1147 (citing 1994 Alaska Sess. Laws ch. 41, § 1). The Supreme Court concluded based on these provisions that the Alaska statute on its face expressed an intent to create a civil scheme designed to protect the public from harm. *Id.*

The North Carolina General Assembly made identical findings to those of the Alaskan legislature, but also expressly stated:

the purpose of this Article [is] to assist law enforcement agencies' efforts to protect communities by requiring persons who are convicted of sex offenses or of certain other offenses committed against minors to register with law enforcement agencies, to

require the exchange of relevant information about those offend-
ers among law enforcement agencies, and to authorize the access
to necessary and relevant information about those offenders to
others as provided in this Article.

N.C. Gen. Stat. § 14-208.5. Since the North Carolina statute's expres-
sion of purpose is indistinguishable from Alaska's, we likewise con-
clude that the North Carolina General Assembly has expressed an
intent to establish a civil regulatory scheme to protect the public.

The offender in *Smith*, like defendant here, argued that the codi-
fication of the legislation in the State's criminal code suggested a
punitive objective. The structure of the law is "probative of the legis-
lature's intent" but "not dispositive" since "[t]he location and labels
of a statutory provision do not by themselves transform a civil rem-
edy into a criminal one." *Smith*, 538 U.S. at 94, 155 L. Ed. 2d at 178,
123 S. Ct. at 1148. Alaska's public disclosure procedures are codified
within the state's "Health, Safety and Housing Code," while its regis-
tration provisions are codified within the state's criminal procedure
code. Because Alaska's Code of Criminal Procedure contains many
provisions that do not involve criminal punishment, the Supreme
Court held that "[t]he partial codification of [Alaska's] Act in the
State's criminal procedure code is not sufficient to support a conclu-
sion that the legislative intent was punitive." *Id.* at 95, 155 L. Ed. 2d
at 178, 123 S. Ct. at 1148.

North Carolina differs from Alaska in that its public disclosure
and registration procedures are both codified within the criminal
code. Nevertheless, like Alaska, North Carolina's criminal code "con-
tains many provisions that do not involve criminal punishment," *id.*,
such as procedures for issuing and obtaining a permit to carry a con-
cealed handgun, N.C. Gen. Stat. §§ 14-415.11 through 14-415.16
(2003); regulations governing the posting of property, N.C. Gen. Stat.
§ 14-159.7 (2003); and the requirement that the Department of Health
and Human Services obtain annual statistical summaries regarding
lawful abortions, N.C. Gen. Stat. § 14-45.1 (2003). We do not believe
that the fact that the public disclosure provisions are contained in the
same portion of the criminal code as the registration provisions suf-
ficiently distinguishes North Carolina's statute from Alaska's to jus-
tify concluding that the General Assembly, contrary to the purpose
expressed in N.C. Gen. Stat. § 14-208.5, intended the legislation to be
punitive rather than a civil regulatory scheme. *See State v. Mount*,
317 Mont. 481, 491, 78 P.3d 829, 837 (2003) ("Since, as we have already

stated, the declared purpose of the [Montana registration] Act is clearly nonpunitive, we conclude that the fact that the Act is codified in the code of criminal procedure does not, in and of itself, transform the Act's nonpunitive, civil regulatory scheme into a criminal one.").

B. The Effects of the Law

Having concluded that the legislature did not intend that the provisions of Article 27A be punitive, we next analyze whether the effects of the registration law are sufficiently punitive to make Article 27A an unconstitutional *ex post facto* law. The Supreme Court held that in analyzing the effects of the legislation, courts should consider the factors set out in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69, 9 L. Ed. 2d 644, 660-61, 83 S. Ct. 554, 567-68 (1963). *Smith*, 538 U.S. at 97, 155 L. Ed. 2d at 179-80, 123 S. Ct. at 1149. The Court found the most relevant factors for registration laws to be "whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose." *Id.* at 97, 155 L. Ed. 2d at 180, 123 S. Ct. at 1149.

1. *Historical Treatment*

The Supreme Court noted that "[a] historical survey can be useful because a State that decides to punish an individual is likely to select a means deemed punitive in our tradition, so that the public will recognize it as such." *Id.* Defendant's argument that public disclosure of the registration information subjects sex offenders to the traditional punishments of humiliation and ostracism is identical to the argument made and rejected by the Supreme Court in *Smith*. As the Court explained, any stigma flowing from the registration requirements is not due to public shaming, but arises from the dissemination of accurate information which is already public:

> Our system does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment. . . . In contrast to the colonial shaming punishments . . . the State does not make the publicity and the resulting stigma an integral part of the objective of the regulatory scheme.

*Id.* at 98-99, 155 L. Ed. 2d at 181, 123 S. Ct. at 1150. With respect to the posting of information on the internet, an issue also raised by defend-

ant in this case, the Court held that "[t]he purpose and the principal effect of notification are to inform the public for its own safety, not to humiliate the offender" and a search for information over the internet is analogous to a visit to an official archive of criminal records, only "more efficient, cost effective, and convenient for [the State's] citizenry." *Id.*, 123 S. Ct. at 1151. Defendant has not presented any argument why historical considerations should lead to a different conclusion with respect to North Carolina's legislation than the Supreme Court reached with respect to Alaska's statute. *See also Mount*, 317 Mont. at 492, 78 P.3d at 838 ("Any shame that [defendant] may experience results from his previous conviction, not from disclosure of that fact to the public. Indeed, [defendant's] conviction and sentence is already a matter of public record.").

### 2. *Affirmative Restraint or Disability*

Defendant contends that "[w]hile a sex offender is not restrained and is free to move without obtaining permission," the registration requirements still constitute a restraint on a prior offender's liberty. If, however, "the disability or restraint is minor and indirect, its effects are unlikely to be punitive." *Smith*, 538 U.S. at 100, 155 L. Ed. 2d at 181, 123 S. Ct. at 1151. Article 27A imposes no actual restraint or limitation on an offender's movements. After the initial registration, Article 27A imposes no requirement that offenders ever again appear in person before law enforcement in order to comply with the registration requirements. Then, as defendant concedes, prior offenders are free to move wherever they choose subject only to the requirement that they update their address in writing within ten days of moving and verify their address annually. Furthermore, prior offenders are free to work wherever they choose with the sole caveat that certain offenders must provide the sheriff's department with information about their place of employment and/or the school they attend. N.C. Gen. Stat. § 14-208.7(a1).

North Carolina's Article 27A, like Alaska's law, "does not restrain activities sex offenders may pursue but leaves them free to change jobs or residences." *Smith*, 538 U.S. at 100, 155 L. Ed. 2d at 181, 123 S. Ct. at 1152. The Supreme Court held that Alaska's registration requirements "make a valid regulatory program effective and do not impose punitive restraints in violation of the *Ex Post Facto* Clause." *Id.* at 102, 155 L. Ed. 2d at 183, 123 S. Ct. at 1152. We similarly hold that North Carolina's registration requirement imposes only an indirect restraint upon prior offenders rather than a punitive restraint.

### 3. *Traditional Aims of Punishment*

Defendant contends that Article 27A is punitive because it promotes the traditional objectives of punishment, such as deterrence, by publicly humiliating prior offenders. The United States Supreme Court held otherwise with respect to the Alaska statute. The Supreme Court reasoned that even if public notification will have a deterrent effect, "[a]ny number of governmental programs might deter crime without imposing punishment. To hold that the mere presence of a deterrent purpose renders such sanctions criminal . . . would severely undermine the Government's ability to engage in effective regulation." *Id.* (internal quotation marks omitted). Defendant makes no argument why this factor should be different for the North Carolina legislation.

### 4. *Rational Connection to a Nonpunitive Purpose*

The Supreme Court held in *Smith* that "[t]he Act's rational connection to a nonpunitive purpose is a 'most significant' factor in our determination that the statute's effects are not punitive." *Id.* Defendant in this case does not dispute that a rational connection exists.

### 5. *Excessiveness in Relation to Purpose*

Defendant focuses primarily on his claim that the State's registration scheme is excessive in relation to its purpose because a violation of the registration requirements is a Class F felony. The penalty imposed for a violation of the registration requirements is, however, irrelevant to the question whether the registration requirements themselves constitute an unconstitutional *ex post facto* law.

The Supreme Court recognized in *Smith* that the criminal prosecution arising out of a violation of the registration requirements has no *ex post facto* implications: "A sex offender who fails to comply with the reporting requirement may be subjected to a criminal prosecution for that failure, but any prosecution is a proceeding separate from the individual's original offense." *Id.* at 101-02, 155 L. Ed. 2d at 182-83, 123 S. Ct. at 1152. The Class F felony penalty is not additional punishment imposed for the prior sex offense, but rather punishment for a new offense: violation of the registration requirements.

As defendant has recognized, it is not unusual for the General Assembly to designate as crimes failures to comply with civil regulatory schemes. *See, e.g.*, N.C. Gen. Stat. § 14-288.12 (2003) (violation of a municipal ordinance establishing a curfew during a state of emer-

gency is a Class 3 misdemeanor); N.C. Gen. Stat. § 14-322 (2003) (failure to pay child support is a Class 1 misdemeanor); N.C. Gen. Stat. § 14-415.1 (2003) (possession of a firearm by a felon is a Class G felony); N.C. Gen. Stat. § 105-236 (2003) (failure to file a state income tax return is a Class 1 misdemeanor). The fact that a violation of a civil regulatory provision such as the registration requirements leads to a harsh penalty is not pertinent to whether the registration requirements are additional punishment for the previously-committed sex offense. *See Russell v. Gregoire*, 124 F.3d 1079, 1088-89 (9th Cir. 1997) ("We emphasize that the crime of failing to register under the Act constitutes a separate offense. . . . It is hornbook law that no *ex post facto* problem occurs when the legislature creates a new offense that includes a prior conviction as an element of the offense, as long as the other relevant conduct took place after the law was passed."), *cert. denied*, 523 U.S. 1007, 140 L. Ed. 2d 321, 118 S. Ct. 1191 (1998); *Meinders v. Weber*, 2000 S.D. 2, 24, 604 N.W.2d 248, 259 (S.D. 2000) ("Any punishment flowing from the sex offender registration statutes comes from a failure to register, not from the past sex offense."); *State v. Cook*, 83 Ohio St. 3d 404, 421, 700 N.E.2d 570, 584 (1998) ("[T]he punishment is not applied retroactively for [a sexual offense] that was committed previously, but for a violation of law [the failure to register] committed subsequent to the enactment of the law."), *cert. denied*, 525 U.S. 1182, 143 L. Ed. 2d 116, 119 S. Ct. 1122 (1999).

The question for purposes of *ex post facto* analysis is whether additional punishment has been retroactively imposed on defendant for his conviction for indecent liberties. The proper analysis considers whether the registration requirements are excessive—in other words, whether the extent and duration of those requirements are greater than necessary to meet the legislature's purpose. Defendant has made no argument regarding the excessiveness of the registration requirements apart from the penalty imposed for a violation of those requirements. The Supreme Court in *Smith* found that lifetime registration requirements were not excessive. *Id.* at 104-05, 155 L. Ed. 2d at 184-85, 123 S. Ct. at 1153-54. Since North Carolina only requires registration for ten years, N.C. Gen. Stat. § 14-208.7, we hold that the registration requirements are not excessive in light of the General Assembly's nonpunitive objective.

### 6. *Totality of the Factors*

The Supreme Court held that its "examination of the Act's effect leads to the determination that respondents cannot show, much

less by the clearest proof, that the effects of the law negate Alaska's intention to establish a civil regulatory scheme." *Smith*, 538 U.S. at 105, 155 L. Ed. 2d at 185, 123 S. Ct. at 1154. We likewise hold that the effects of North Carolina's registration law do not negate the General Assembly's expressed civil intent and that retroactive application of Article 27A does not violate the prohibitions against *ex post facto* laws.

IV

Defendant contends alternatively that the trial court violated the *ex post facto* provisions by sentencing him for a Class F felony rather than a Class 3 misdemeanor as the law provided in 1995 when he committed the offense of indecent liberties. Defendant has again overlooked the fact that his felony sentence was for the failure to register offense committed in 2001 and not for the indecent liberties offense committed in 1995.

The General Assembly amended N.C. Gen. Stat. § 14-208.11 in 1998 to change the penalty for violation of the registration requirements from a Class 3 misdemeanor for a first conviction to a Class F felony. Defendant violated the registration requirements in 2001, three years after the change in the law. The trial court therefore properly sentenced defendant as a Class F felon.

Although defendant argues that the sentence is excessive in comparison to sentences imposed for other offenses, such a contention is more properly asserted as a violation of the prohibition against cruel and unusual punishment contained in the Eighth Amendment. Because defendant failed to raise that issue before the trial court, we do not address it.

No error.

Chief Judge EAGLES and Judge HUNTER concur.