IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-129

Filed 5 February 2025

Guilford County, Nos. 06CRS99612-13 07CRS24002

STATE OF NORTH CAROLINA

v.

NICHOLAS JAMES SPRY

Appeal by defendant by writ of certiorari from orders entered 7 March 2023 and 2 June 2023 by Judge R. Stuart Albright in Guilford County Superior Court. Heard in the Court of Appeals 15 January 2025.

*Attorney General Jeff Jackson, by Assistant Attorney General, Caden W. Hayes, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender, Heidi Reiner, for the defendant.*

TYSON, Judge.

Nicholas James Spry ("Defendant") appeals the 7 March 2023 order denying his Motion for Appropriate Relief (MAR) and the 2 June 2023 order denying his "supplemental" MARs. We vacate and remand to the trial court to hold an evidentiary hearing regarding Defendant's MARs.

## I. Background

Defendant robbed an adult employee at a restaurant in Greensboro on 25 November 2006. He was subsequently indicted for three crimes stemming from that

robbery: common law robbery, second-degree kidnapping, and attempted second-degree kidnapping. The two kidnapping indictments alleged Defendant had attempted to kidnap Kate and had kidnapped Leslie, who were both "person[s] under the age of sixteen (16) years."

Defendant entered into a plea bargain and pled guilty to all three charges on 30 January 2007. Consistent with the plea arrangement, the trial court consolidated the offenses for judgment and sentenced Defendant to an active term of 25 to 39 months of imprisonment, and he was placed on nine months of post-release supervision. On the original judgment, the sentencing judge failed to check the box indicating "the above designated offense(s) is a reportable conviction involving a minor. G.S. 14-208.6."

The Combined Records Section of North Carolina Department of Correction sent a letter to the trial court in February 2007 asking for clarification of the victims' ages for the kidnapping and attempted kidnapping offenses. Without prior notice nor Defendant being present, the trial court entered a "corrected" judgment on 5 March 2007, which included the now-checked box indicating "the above designated offense(s) is a reportable conviction involving a minor. G.S. 14-208.6."

Defendant originally pled guilty to second-degree kidnapping and attempted second-degree kidnapping, both in violation of N.C. Gen. Stat. § 14-39 (2005). After the "correction" of the original judgment, and although the indictment did not allege Defendant had committed a sexual offense against the purportedly minor victims,

Defendant was required to register under the Sex Offender and Public Protection Registration Program pursuant to N.C. Gen. Stat. § 14-208.6(4) (2005). *See* N.C. Gen. Stat. §§ 14-208.5 to 14-208.46 (2023) (Sex Offender and Public Protection Registration Programs); *State v. Sakobie*, 165 N.C. App. 447, 453, 598 S.E.2d 615, 619 (2004) ("The language of section 14-208.6(1[m]) is clear and unambiguous: an offense against a minor includes kidnapping pursuant to N.C. Gen. Stat. § 14-39.").

Because the kidnapping offenses required Defendant to register as a sex offender, Defendant was also sentenced to five years of post-release supervision pursuant to N.C. Gen. Stat. § 15A-1368.2(c) (2005) (providing a person convicted of a class F through I felony was required to receive nine months of post-release supervision "unless the offense is an offense for which registration is required," in which case "the period of post-release supervision is five years"). In sum, the "corrected" judgment sentenced Defendant to 25 to 39 months of active imprisonment, placed him on five years of post-release supervision, and required him to register as a sex offender.

Defendant was not present when the "corrected" judgment was entered, and the record is devoid of any proof Defendant was aware of the letter sent from Combined Records. Defendant's first MAR asserts Defendant only learned of the "corrected" judgment shortly before he was released from prison in April of 2009, more than two years after the "corrected" judgment was entered.

Richard Wells ("Wells"), the counsel who represented Defendant when he

entered into the plea agreement on 30 January 2007, was appointed to represent Defendant on his Petition for Termination of Sex Offender Registration in 2022. When reviewing Defendant's court documents, Wells "noticed that [he] almost certainly didn't advise [Defendant] on sex registration." Wells noticed this, in part, because Wells had failed to instruct another defendant on mandatory sex registration in an unrelated case on 7 February 2007, merely one week after Defendant entered into his plea agreement. Wells, on his own initiative, met with Defendant and agreed to draft a MAR.

Defendant, proceeding *pro se*, filed the MAR drafted by Wells on 26 January 2023, nearly sixteen years after the "corrected" judgment was entered. The MAR sought to vacate Defendant's guilty plea, asserting Defendant was never informed he would be required to register as a sex offender or be subject to the extended post-release supervision consequences of that registration status. Defendant supported his MAR with the following: (1) his own affidavit; (2) an affidavit from his trial counsel, both of whom asserted neither sex offender registration nor extended post-release supervision were ever discussed prior to Defendant's guilty plea; and, (3) the letter from Combined Records to the court, which led to an amended judgment identifying the kidnapping as a reportable conviction involving a minor.

The trial court summarily denied Defendant's MAR on 7 March 2023 based upon its finding the "matter presents only legal issues, which may be resolved without an evidentiary hearing." The court in the order found: (1) sex offender registration

constituted a collateral consequence of Defendant's guilty plea; (2) sex offender registration did not affect the voluntariness of Defendant's plea; and, (3) potential registration did not need to be disclosed by Defendant's counsel.

Although Defendant was never provided with the requested transcript of his plea, the trial court found the original sentencing judge had "asked all of the required questions and made all of the findings set forth in NCGS 15A-1022", and "the trial court's plea colloquy with Defendant was in all respects legally valid."

The trial court took judicial notice of the following facts: Defendant had filed his MAR "more than fifteen" years after he had entered his plea; Defendant had been convicted of failing to register as a sex offender on multiple occasions in 2012; Defendant pled guilty to failing to register as a sex offender in 2016; Defendant did not challenge his duty to register as a sex offender in those subsequent proceedings, either prior to his failure to register as a sex offender convictions or in postconviction MARs; and, Defendant waited to file his MAR after his request to be removed from the sex offender registration was denied. The trial court found "the unambiguous record shows Defendant was well aware of his requirement to register as a sex offender when he entered his guilty plea in this case in 2007."

Defendant filed additional motions on 1 May and 17 May 2023, which sought relief in a "supplemental" MAR and a copy of the stenographic transcript of the plea hearing. In the first motion, Defendant again argued his plea was involuntary, emphasizing he was unaware he would be placed on post-release supervision for five

years because of his sex offender registration, when he agreed to, expected to, and was originally sentenced to receive nine months post-release supervision. He also argued his first MAR was improperly denied without an evidentiary hearing. In his second motion on 17 May 2023, he contended, for the first time, that the sentencing judge had "made improper statements regarding plea and participated in plea arrangement."

The trial court denied Defendant's motions on 2 June 2023. The order treated petitioner's two filings as "supplemental" MARs and summarily denied both filings as procedurally barred, based on the denial of petitioner's original MAR. The record is devoid of any proof Defendant ever received a transcript of the original plea hearing. Defendant appeals.

## II.    Jurisdiction

A prior panel of this Court granted Defendant's petition for writ of *certiorari* on 31 August 2023. N.C. R. App. P. 21(a)(1). *See State v. Saldana*, 291 N.C. App. 674, 677, 896 S.E.2d 193, 196 (2023) ("Because Defendant filed the MAR 'long after the time for taking appeal had expired, he can obtain appellate review of the court's ruling only by a petition for a *writ of certiorari*.'" (quoting *State v. Isom*, 119 N.C. App. 225, 227, 458 S.E.2d 420, 421 (1995))), *review dismissed, cert. denied*, 901 S.E.2d 800 (2024).

## III.    Motions for Appropriate Relief

Defendant seeks review of the 7 March 2023 order summarily denying his

original MAR and the 2 June 2023 order denying his supplemental MARs.  Defendant argues the trial court erred by summarily denying his MARs and concluding his guilty plea was knowingly and voluntarily entered and the consequences thereof were collateral or indirect.

## A. Standard of Review

This Court reviews *de novo* an order summarily denying an MAR.  *State v. Allen*, 378 N.C. 286, 296, 861 S.E.2d 273, 281 (2021).  The Court must determine "whether the evidence contained in the record and presented in [the] MAR— considered in the light most favorable to [Defendant]—would, if ultimately proven true, entitle him to relief." *Id.*

A defendant is entitled to an evidentiary hearing on his MAR "[i]f answering this question requires resolution of any factual disputes[.]" *Id.* at 297, 861 S.E.2d at 281. "By contrast, when a defendant's MAR 'presents only questions of law, including questions of constitutional law, the trial court must determine the motion without an evidentiary hearing.'" *Id.* at 296, 861 S.E.2d at 281 (quoting *State v. McHone*, 348 N.C. 254, 257, 499 S.E.2d 761, 763 (1998)).

The trial court summarily denied Defendant's MAR after finding the motion presented solely a legal question versus a factual one: whether the requirement that Defendant register as a sex offender and its consequences affected the validity of his guilty plea.

## B. Analysis

"Under *Boykin*, due process, as established by the Fourteenth Amendment to the United States Constitution, requires that a defendant's guilty plea be made voluntarily, intelligently and understandingly." *State v. Bozeman*, 115 N.C. App. 658, 661, 446 S.E.2d 140, 142 (1994) (citing *Boykin v. Alabama*, 395 U.S. 238, 244, 23 L.Ed.2d 274, 280 (1969)).

"Although a defendant need not be informed of all possible indirect and collateral consequences, the plea nonetheless must be 'entered by one fully aware of the *direct consequences,* including the actual value of any commitments made to him by the court. . . .'" *Id.* (first quoting *Brady v. United States*, 397 U.S. 742, 755, 25 L.Ed.2d 747, 760 (1970) (emphasis supplied); then citing *State v. Mercer*, 84 N.C. App. 623, 627, 353 S.E.2d 682, 684 (1987)).

"Direct consequences are those that have a definite, immediate and largely automatic effect on the range of the defendant's punishment." *State v. Smith*, 352 N.C. 531, 551, 532 S.E.2d 773, 786 (2000) (quotation marks and citation omitted). "However, [t]he imposition of a sentence or sentences may have a number of collateral consequences, and a plea of guilty is not rendered involuntary in a constitutional sense if the defendant is not informed of *all of the possible* indirect and collateral consequences." *State v. Bare*, 197 N.C. App. 461, 479, 677 S.E.2d 518, 531 (2009) (emphasis supplied) (quotation marks and citation omitted).

Nevertheless, "[a] defendant cannot plead guilty without being informed of collateral consequences that might affect their taking the plea." *State v. Womble,* 277

N.C. App. 164, 193, 858 S.E.2d 304, 323 (2021) (citing *Padilla v. Kentucky*, 559 U.S. 356, 371, 176 L. Ed. 2d 284, 297 (2010)).

Defendant argues he was not informed and was factually unaware of two consequences when entering his guilty plea to the two kidnapping charges: (1) sex offender registration; and, (2) the imposition of five years of post-release supervision, compared to the nine months of post-release supervision to which the parties agreed in the plea agreement and imposed in the original judgment.

### 1. *Question of Fact*

Before we address whether sex offender registration or the extended post-release supervision period to which Defendant was subjected were direct or collateral consequences of Defendant's guilty plea, we must address whether the trial court erred by failing to hold an evidentiary hearing. Defendant argues the trial court erred by summarily dismissing his MARs. We agree.

A defendant is entitled to an evidentiary hearing if the trial court's ruling on a defendant's MAR requires the trial court to settle "any factual disputes[.]" *Allen*, 378 N.C. at 297, 861 S.E.2d at 281. Additionally, our General Statutes require trial courts to record and retain "[a] verbatim record of the proceedings at which the defendant enters a plea of guilty[.]" N.C. Gen. Stat. § 15A-1026 (2023). "This record must include the judge's advice to the defendant, and his inquiries of the defendant, defense counsel, and the prosecutor, and any responses." *Id.*

"[I]n most cases[,] reference to the verbatim record of the guilty plea proceedings will conclusively resolve all questions of fact raised by a defendant's motion to withdraw a plea of guilty and will permit a trial judge to dispose of such motion without holding an evidentiary hearing." *State v. Dickens*, 299 N.C. 76, 84, 261 S.E.2d 183, 188 (1980) (citation omitted). "[R]egardless of whether evidentiary hearings are held, the importance of protecting the innocent and [e]nsuring that guilty pleas are a product of free and intelligent choice requires that such claims be patiently and fairly considered by the courts." *Id.* (quotation omitted).

In *State v. Dickens*, our Supreme Court held the trial court should have conducted an evidentiary hearing regarding whether the defendant had agreed to a plea bargain while under a misapprehension regarding his sentence:

> We note the record on appeal in this case does not contain a verbatim record of the proceedings at which defendant entered his pleas of guilty. *See* G.S. 15A-1026. Absent such a verbatim record, we have no way of determining the import of defendant's failures to give written answers to Questions 7 and 10 in the Transcript of Plea. Nor do we know the nature of the representations, if any, made by defendant, defendant's trial attorney, or the prosecutor in response to mandatory inquiries by the trial court as to whether any plea bargains had been made or discussed. *See* G.S. 15A-1022(b). On this record we must conclude that defendant's allegations *raise a question of fact as to whether defendant entered the guilty pleas* under the misapprehension that a plea bargain had been made with respect to sentence. Accordingly, *an evidentiary hearing must be held* in which defendant "has the burden of proving by a preponderance of the evidence every fact essential to support the motion." G.S. 15A-1420(c)(5).

*Id.* at 84-85, 261 S.E.2d at 188 (emphasis supplied).

Here, as in *Dickens*, "the record on appeal in this case does not contain a verbatim record of the proceedings at which defendant entered his pleas of guilty." *Id.* at 84. The sentencing court was statutorily obligated to create such a record, pursuant to N.C. Gen. Stat. § 15A-1026, and its absence from the record on appeal limits this Court's ability to adjudicate Defendant's claims. *Id.* Although the trial court made findings of fact in its first 7 March 2023 order indicating it had reviewed the transcript of Defendant's guilty plea, the record before us is devoid of any transcript of those proceedings. Defendant's request for the transcript of entry of his pleas in his supplemental MAR was also summarily denied by the trial court on 2 June 2023.

Similar to *Dickens*, "the trial court should have held a hearing, received evidence under oath from defendant personally and from his trial counsel [Richard Wells], together with any other relevant evidence, and then made findings of fact as to whether or not defendant entered the guilty pleas under [a] misapprehension[.]" *Dickens*, 299 N.C. at 83, 261 S.E.2d at 187. For these reasons, we remand this matter to the trial court to hold an evidentiary hearing to receive, hear, and resolve factual issues regarding whether Defendant's guilt was entered into "voluntarily, intelligently and understandingly." *Bozeman*, 115 N.C. App. at 661, 446 S.E.2d at 142.

### 2. *Sex Offender Registration*

North Carolina appellate courts have not addressed whether the sex offender registration requirement, as outlined in N.C. Gen. Stat. § 14-208.7, should be considered a direct or collateral consequence of a guilty plea to an offense compelling mandatory sex offender registration. N.C. Gen. Stat. § 14-208.7 (2023). In *State v. Bare*, this Court rejected a defendant's argument that a related requirement, lifetime satellite-based monitoring ("SBM"), constituted a direct consequence of the defendant's plea:

> We disagree that lifetime satellite-based monitoring was an automatic result of defendant's no contest plea. "When an offender is convicted of a reportable conviction as defined by N.C. Gen. Stat. § 14-208.6(4), during the sentencing phase," the trial court is required to separately determine whether an offender meets the criteria subjecting him to SBM. N.C. Gen. Stat. § 14-208.40A. If there has been no determination by the court whether an offender is required to enroll in SBM, the DOC makes the initial determination, schedules a hearing, notifies the offender, and the trial court determines in a separate hearing whether the offender falls under one of the categories subjecting him to SBM. N.C. Gen. Stat. § 14-208.40B (2007). Therefore, imposition of SBM was not an automatic result of his no contest plea, unlike a mandatory minimum sentence or an additional term of imprisonment.

*State v. Bare*, 197 N.C. App. 461, 480, 677 S.E.2d 518, 531-32 (2009).

Although Defendant acknowledges the ruling in *Bare*, Defendant argues sex offender registration differs from SBM because it is a direct and immediate consequence of pleading guilty to certain crimes. Before a defendant is subjected to SBM, a separate hearing is held after a judgment has been entered. *Id.* (explaining

SBM is "not an automatic result" of a guilty plea because "the DOC makes the initial determination, schedules a hearing, notifies the offender, and the trial court determines in a separate hearing whether the offender falls under one of the categories subjecting him to SBM").

Defendant argues sex offender registration differs from SBM, because the registration requirement is an immediate consequence following a conviction for certain crimes, as indicated by the check-box option requiring mandatory sex offender registration on the front page of a criminal judgment.

This Court has held our General Assembly's intent when enacting the sex offender registration statute was nonpunitive. *State v. White*, 162 N.C. App. 183, 197, 590 S.E.2d 448, 457 (2004) ("Since North Carolina only requires registration for ten years, N.C. Gen. Stat. § 14-208.7, we hold that the registration requirements are not excessive in light of the General Assembly's nonpunitive objective.").

Other states have agreed sex offender registration is nonpunitive. *See e.g., State v. Legg*, 28 Kan. App. 2d 203, 207, 13 P.3d 355, 358 (2000) ("Sex offender registration is not penal in nature or a direct consequence to a plea."). Most states have concluded sex offender registration constitutes a collateral consequence, which does not impact the validity of a guilty plea. *See Magyar v. State*, 18 So. 3d 807, 812 fn. 5 (Miss. 2009) (collecting cases from twenty-eight states and holding "although we do not recognize the law of other states as controlling precedent, our decision today is nevertheless aided by the viewpoint of virtually every other jurisdiction to address

the question" viewed sex offender registration as a collateral consequence of a guilty plea).

We find the research and analysis by the court in *Magyar* persuasive. The court in *Magyar* researched the way other states handled this question and found twenty-eight states have held sex offender registration is a collateral consequence of a guilty plea. *Magyar*, 18 So. 3d at 812 fn. 5. While other states' decisions are not binding upon this Court, they are persuasive. *N.C. Ins. Guar. Ass'n v. Weathersfield Mgmt.*, 268 N.C. App. 198, 203, 836 S.E.2d 754, 758 (2019) (citation omitted) ("When this Court reviews an issue of first impression, it is appropriate to look to decisions from other jurisdictions for persuasive guidance.").

We agree with the overwhelming majority of state courts and hold sex offender registration is a collateral consequence of a guilty plea to a crime requiring registration. *Id.*; *Magyar*, 18 So. 3d at 812 fn. 5. The trial court did not err by holding the requirement for Defendant to register as a sex offender is a collateral consequence of his guilty plea.

### 3. *Extended Post-Release Supervision*

The trial court's first 7 March 2023 order found sex offender registration was a collateral consequence of Defendant's guilty plea. The order, however, failed to mention the extended post-release supervision period to which Defendant was subjected and which was imposed as a result of his plea.

Defendant's first "supplemental" MAR, filed on 1 May 2023 and titled "Motion to Vacate Trial Court's Order AND Supplemental Motion for Appropriate Relief," emphasized Defendant's post-release supervision argument. Defendant included the following information in this motion:

> Defendant signed a plea for 25-39 months active with the impression that he would do 25-30 months to be released on 9 months (PRS). . . . [D]efendant was not admonished that he would be subject to registration requirements or the lengthier 5 years PRS and its much more onerous conditions of supervision. Specifically, [D]efendant was not advised that a condition of his PRS would be that minors would not be allowed to live with him during his time on PRS. Defendant was ultimately forced to kick his own brother(s) out and into foster care. Defendant served ten months on PRS before it was revoked. He therefore spent 40 months of imprisonment, and was prejudiced by a lengthier sentence th[a]n he had agreed to.

The affidavit attached to this motion contained the following:

> 3. I was forced to kick my minor brothers out of my apartment when my PRS officer discovered they were living with me. I was not aware that a direct consequence of my plea forbid minors to live with me during my time on PRS. At the time in 2009-2010[,] my mother had been suffering from serial homelessness for years. I was aware of this, and the fact that my brothers were likely to be in need of help with housing upon my release, when I took the plea.

The trial court's 2 June 2023 order, which summarily dismissed Defendant's supplemental MARs, found this motion "essentially reargues [Defendant's] previous MAR and asks this Court to change its ruling." The trial court summarily dismissed Defendant's supplemental MARs.

- 15 -

On appeal, the State argues Defendant's post-release supervision argument is procedurally barred because Defendant failed to raise it in his first MAR. We disagree.

Defendant's first MAR asserted the following:

> 4. Prior to entry of the plea, and in discussion with defense counsel Richard Wells, no mention was made of the possibility of having to register under the Sex Offender and Public Protection Registration Program (Sex Registry). My guilty plea was not fully informed because it left out this very important and restrictive detail. I would then, and still now, plead guilty to the Common Law Robbery. But I would not have pled guilty to the kidnapping-related charges had I known sex registration was the result.
> . . .
> 12. In addition, it is my belief that these sex registerable kidnapping-related convictions resulted in my receiving 5 years of post-release supervision. This time period is different than persons convicted of crimes that do not carry sex registration. *NCGS 15A-1368.2(c)*. This additional post-release supervision was never explained to me prior to my 2007 plea[,] and I have never attended a court hearing where I had notice and a chance to address this question in a courtroom. This additional sanction of definite and potential increased time on post-release supervision is a violation of constitutional principles as noted in <u>*Blakely v. Washington*</u>, 542 US 296 (2004). <u>See also</u> "Reportable Kidnapping," Jamie Markham, NCSOG Criminal Law Blog (Feb 5th, 2015).

Defendant pled sufficient facts in this motion to preserve Defendant's post-release supervision argument.

Defendant similarly argues his plea was not knowing and voluntary because it resulted in sixty (60) months of post-release supervision, a term that only applies to

sex offenders. He asserts this extended supervision was not mentioned nor agreed to during his plea negotiations or hearing. Defendant also asserts the extended post-release supervision should be considered a direct consequence, which would render his guilty plea involuntary. He argues the statute mandating sixty (60) months of post-release supervision creates "a definite, immediate and largely automatic effect on the range of the defendant's punishment." *Smith*, 352 N.C. at 551 (internal quotations and citations omitted).

### a. Statutory Guidance

N.C. Gen. Stat. § 15A-1022 (2023) sets out the requirements for advising criminal defendants of the consequences of their guilty pleas. The statute does not include a requirement for a defendant to be informed of post-release supervision before the trial court may accept a defendant's guilty plea. *See id.*

N.C. Gen. Stat. § 15A-1368(a)(1) (2023) defines post-release supervision as "[t]he time for which a sentenced prisoner is released from prison before the termination of his maximum prison term[.]" N.C. Gen. Stat. § 15A-1368(a)(1). One of the purposes of post-release supervision is "to monitor and control the prisoner in the community[.]" *Id.*

### b. State v. Bare

This Court in *State v. Bare* clearly distinguished SBM and sex offender registration from post-release supervision and probation:

> The sex offender registration requirements may also

be imposed as a condition to probation or post-release supervision. See N.C. Gen. Stat. § 15A-1343(b2)(1) (2007) (registration "as required by N.C. Gen. Stat. § 14-208.7" is included as a "special condition of probation"); N.C. Gen. Stat. § 15A-1368.4(b1)(1) (2007). In *Smith*, the United States Supreme Court examined whether registration requirements for sex offenders were parallel to supervised release or probation, which are punishments for crime. 538 U.S. at 101-02, 123 S. Ct. at 1152, 155 L.Ed.2d at 182. The Supreme Court distinguished the registration requirements from conditions imposed by probation because offenders were still "free to move where they wish and to live and work as other citizens with no supervision." *Id.* While SBM results in electronic monitoring of an offender's whereabouts, the record does not indicate that it restricts an offender's liberty in matters such as where to live and work. SBM is therefore similar to registration requirements in this regard *and is distinguishable from probation, parole, and post-release supervision. See id.*

*Bare*, 197 N.C. App. at 470-71, 677 S.E.2d at 526 (emphasis supplied). The reasoning in *Bare* states the classification of SBM monitoring and sex offender registration as collateral consequences does not also mean post-release supervision is also a collateral consequence. *Id.* Instead, the Court in *Bare* states post-release supervision is "distinguishable" and is a "punishment[ ] for a crime." *Id.*

The courts in New York, New Jersey, and Kansas agree with the reasoning in *Bare*. Each of those jurisdictions has found the failure to advise a pleading defendant about a mandatory term of post-release supervision renders a plea involuntary. *See People v. Catu*, 825 N.E.2d 1081 (N.Y. 2005) ("Because a defendant pleading guilty to a determinate sentence must be aware of the post[-]release supervision component of that sentence in order to knowingly, voluntarily and intelligently choose among

alternative courses of action, the failure of a court to advise of post[-]release supervision requires reversal of the conviction."); *State v. Johnson*, 864 A.2d 400, 405 (N.J. 2005) (holding that being subject to a "mandatory period of parole supervision constituted a direct, penal consequence of defendant's plea" and that "because defendant was not informed about the consequences of being subject to [the] fixed period of parole supervision, . . . he is entitled to seek the vacation of his plea"); *Helms v. State*, 281 P.3d 180 (Kan. Ct. App. 2012) (unpublished) ("The State concedes that the district court failed to mention the mandatory post[-]release supervision requirements until Helm's sentencing hearing. Accordingly, Helm's pleas must be set aside.").

In accordance with *Bare*, we hold post-release supervision is distinguishable from SBM and sex offender registration. *Bare*, 197 N.C. App. at 470-71, 677 S.E.2d at 526 (explaining SBM is "distinguishable from probation, parole, and post-release supervision" because it does not "restrict[ ] an offender's liberty in matters such as where to live and work").

Our General Statutes also indicate the purpose of post-release supervision is "to monitor and control the prisoner in the community," and post-release supervision is not intended to be nonpunitive in nature. *Compare* N.C. Gen. Stat. § 15A-1368(a)(1) *with State v. White*, 162 N.C. App. 183, 197, 590 S.E.2d 448, 457 (2004) ("Since North Carolina only requires registration for ten years, N.C. Gen. Stat. § 14-

208.7, we hold that the registration requirements are not excessive in light of the General Assembly's nonpunitive objective.").

The five years of post-release supervision to which Defendant was subjected , as opposed to the nine months to which he agreed, were a "direct consequence" of his guilty plea, because those additional months had a "definite, immediate and largely automatic effect on the range of the defendant's punishment." *Smith*, 352 N.C. at 551, 532 S.E.2d at 786 (internal quotations and citations omitted). Defendant spent an additional four years in prison after serving his agreed-upon active sentence and his post-release supervision was revoked ten months after his release simply for housing his younger brothers.

Without being aware of the direct consequences of his guilty plea, Defendant cannot be said to have made his plea "voluntarily, intelligently and understandingly." *Bozeman*, 115 N.C. App. at 661, 446 S.E.2d at 142 (citing *Boykin*, 395 U.S. at 244, 23 L.Ed.2d at 280). For Defendant's plea to be knowing and voluntary, and thus valid, Defendant must have been made aware of "the actual value of any commitments made to him by the court." *Id.* (quotations omitted).

We remand to the trial court to address Defendant's post-release supervision arguments consistent with this opinion. It is unnecessary for us to address Defendant's ineffective assistance of counsel claim. On remand, Defendant may raise his ineffective assistance of counsel claim before the trial court to determine whether

the relief he seeks in his MARs, if granted, addresses and moots the relief sought in his ineffective assistance of counsel claim.

## IV.     Conclusion

The trial court erred by summarily denying Defendant's MARs. This matter is remanded to the trial court to hold a hearing, receive and consider evidence, and to make additional findings of fact. *See Dickens*, 299 N.C. at 83, 261 S.E.2d at 187.

The trial court's summary denials of Defendant's MARs are vacated and remanded. Consistent with the guidance and conclusions in this opinion regarding sex offender registration and post-release supervision, the trial court must determine whether Defendant's guilty plea was entered into "voluntarily, intelligently and understandingly." *See Bozeman*, 115 N.C. App. at 661, 446 S.E.2d at 142 (internal quotations and citations omitted). *It is so ordered*.

VACATED AND REMANDED.

Judges ZACHARY and FLOOD concur.