STATE OF NORTH CAROLINA v. FREDDIE JUNIOR BARE

No. COA08-818

(Filed 16 June 2009)

## 1. Constitutional Law— ex post facto law—satellite-based monitoring of sex offenders

The trial court did not err by directing defendant to enroll in satellite-based monitoring (SBM) under N.C.G.S. § 14-208.40B even though defendant contends it violates the *ex post facto* clause of the North Carolina and United States Constitutions when the SBM provisions did not exist at the time defendant was convicted of the charges and imposition of SBM increases defendant's punishment for his crime because: (1) the legislature intended SBM to be a civil and regulatory scheme; (2) the statutes regarding SBM do not refer to, incorporate, or rely upon the definition of "intermediate punishment" under N.C.G.S. § 15A-1340.11(6) and does not compel an interpretation that the legislature intended SBM as a punishment; (3) the fact that SBM can be one of the conditions imposed upon an offender who has not completed his probation, parole, or post-release supervision does not mean that SBM alone is intended as punitive; (4) while SBM results in electronic monitoring of an offender's where-abouts, the record does not indicate that it restricts an offender's liberty in matters such as where to live and work; (5) the fact that SBM provisions are codified in Chapter 14 entitled "Criminal Law" does not in and of itself transform a nonpunitive civil regu-latory scheme into a criminal one; and (6) involvement of the dis-

trict attorney in SBM determination hearings does not by itself supersede the declared intent of the legislature, nor does the fact that the Department of Correction is involved in the risk assessment override the legislature's stated intent.

**2. Sex Offenses— satellite-based monitoring—civil regulatory scheme instead of punitive intent**

The trial court did not err by directing defendant to enroll in satellite-based monitoring (SBM) under N.C.G.S. § 14-208.40B even though defendant contends the statutory scheme is so punitive in purpose or effect as to negate the State's intention to deem it civil because: (1) our Supreme Court has noted the publicity and resulting stigma of the sex offender registry is not an integral part of the objective of the regulatory scheme, and wearing an electronic monitoring device is no more stigmatizing than the public registration of sex offenders required by the sex offender registry; (2) defendant has not shown that cooperation with the Department of Correction for the purposes of maintaining the SBM device is any more of an affirmative restraint than the registration requirements; (3) although defendant characterizes the tracking device as bulky and cumbersome, the record did not contain any information as to the size of the device or any information as to the manner of its attachment to defendant; (4) although defendant contends the device hindered his ability to obtain employment, defendant failed to present any testimony or evidence on this issue, and defense counsel's statements are not considered evidence; (5) the fact alone that the SBM provisions could have a deterrent effect is not enough to override a nonpunitive purpose; (6) defendant does not contest that the SBM provisions have a rational connection to a nonpunitive purpose, and the ability to track the location of individuals who have committed sex offenses against minors or other aggravated sex offenses has a rational connection to the purpose of protecting the public; (7) SBM restrictions are not imposed on all sex offenders, but only those whom the legislature has designated as posing a particular risk; and (8) although the trial court initially imposed SBM for the remainder of defendant's natural life, defendant may request termination of SBM under N.C.G.S. § 14-208.43.

**3. Sentencing— no contest plea—satellite-based monitoring not a direct consequence of plea**

The trial court did not violate N.C.G.S. § 15A-1022 when it failed to inform defendant that imposition of satellite-based mon-

itoring (SBM) would be a direct consequence of his 2002 no contest plea because: (1) defendant's argument is predicated on the assumption that SBM is a punishment, the Court of Appeals has determined that SBM provisions are not punitive, and thus N.C.G.S. § 15A-1022 is not implicated; (2) the imposition of a sentence may have a number of collateral consequences, and a plea of guilty is not rendered involuntary if defendant is not informed of all the possible indirect and collateral consequences; and (3) lifetime SBM was not an automatic result of defendant's no contest plea since the trial court is required to separately determine whether an offender meets the criteria subjecting him to SBM when an offender is convicted of a reportable conviction under N.C.G.S. § 14-208.6(4), or the Department of Corrections makes the initial determination if there has been no determination by the court.

Appeal by defendant from order entered 19 February 2008 by Judge Henry E. Frye, Jr., in Wilkes County Superior Court. Heard in the Court of Appeals 20 November 2008.

*Attorney General Roy Cooper, by Assistant Attorney General Catherine M. (Katie) Kayser, for the State.*

*Mary McCullers Reece, for defendant-appellant.*

CALABRIA, Judge.

Freddie Junior Bare ("defendant") appeals the trial court's order directing him to enroll in satellite-based monitoring ("SBM") pursuant to N.C. Gen. Stat. § 14-208.40B. We affirm the trial court's order.

Defendant pled guilty to indecent liberties with a minor in 1998. The court sentenced defendant to a minimum term of 19 months to a maximum term of 23 months in the North Carolina Department of Correction. In 2002, he pled no contest to failure to register as a sex offender in violation of N.C. Gen. Stat. § 14-208.11 and sexual activity by a custodian of a minor under § 14-27.7. The court consolidated the offenses for judgment and sentenced defendant to a minimum term of 46 months to a maximum term of 65 months in the North Carolina Department of Correction. The court recommended defendant attend and complete a sex offenders program while incarcerated. Defendant was ordered to register as a sex offender within ten days of his release date. In 2006, the General Assembly enacted the SBM provisions which became effective 16 August 2006. N.C. Sess. Laws

2006-247, section 15(a); N.C. Gen. Stat. § 14-208.40 (2007). Defendant was released on 20 April 2007. Defendant was enrolled in SBM on 11 May 2007.

On 19 February 2008, the trial court held a determination hearing pursuant to N.C. Gen. Stat. § 14-208.40B. The trial court found that defendant was convicted of a reportable conviction as defined by N.C. Gen. Stat. § 14-208.6(4) and is a recidivist. Defendant was ordered to enroll in SBM for the remainder of his natural life. Defendant appeals.

## I. Ex Post Facto

**[1]** Defendant contends imposition of SBM violates the *ex post facto* clause of the North Carolina and United States Constitutions because the SBM provisions did not exist at the time defendant was convicted of the charges and imposition of SBM increases defendant's punishment for his crime. We disagree.

The standard of review is *de novo. Falk Integrated Tech., Inc. v. Stack*, 132 N.C. App. 807, 809, 513 S.E.2d 572, 574 (1999) (citation omitted) ("Alleged errors of law are subject to *de novo* review on appeal."). "Because both the federal and state constitutional *ex post facto* provisions are evaluated under the same definition, we analyze defendant's state and federal constitutional contentions jointly." *State v. White*, 162 N.C. App. 183, 191, 590 S.E.2d 448, 454 (2004) (quoting *State v. Wiley*, 355 N.C. 592, 625, 565 S.E.2d 22, 45 (2002) (quotation marks omitted)).

The prohibition against *ex post facto* laws applies to:

> 1st. Every law that makes an action done before the passing of the law; and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offense, in order to convict the offender.

*State v. Pardon*, 272 N.C. 72, 76, 157 S.E.2d 698, 701 (1967) (quotation omitted). Defendant argues that imposition of SBM falls under the third category of *ex post facto* law: "a law which changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." *Id.*

In determining whether a law inflicts a greater punishment than was established for a crime at the time of its commission, we first examine whether the legislature intended SBM to impose a punishment or to enact a regulatory scheme that is civil and nonpunitive. *See Smith v. Doe*, 538 U.S. 84, 92, 123 S.Ct. 1140, 1147, 155 L. Ed. 2d 164, 176 (2003); *State v. Johnson*, 169 N.C. App. 301, 307, 610 S.E.2d 739, 743-44 (2005); *White*, 162 N.C. App. at 192, 590 S.E.2d at 454.

> If the intent of the legislature was to impose punishment, that ends the inquiry. If however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we further examine whether the statutory scheme is so punitive either in purpose or effect as to negate the [legislature's] intention to deem it civil.

*Doe v. Bredesen*, 507 F.3d 998, 1003 (6th Cir. 2007) (internal quotations omitted) (quoting *Kansas v. Hendricks*, 521 U.S. 346, 361, 117 S.Ct. 2072, ——, 138 L. Ed. 2d 501, —— (1997)).

"Because we ordinarily defer to the legislature's stated intent, only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Smith v. Doe*, 538 U.S. at 92, 123 S.Ct. at 1147, 155 L. Ed. 2d at 176 (internal citations and quotation marks omitted) (citations omitted).

### A. Legislative Intent

> Whether a statutory scheme is civil or criminal is first of all a question of statutory construction. We consider the statute's text and its structure to determine the legislative objective. A conclusion that the legislature intended to punish would satisfy an *ex post facto* challenge without further inquiry into its effects, so considerable deference must be accorded to the intent as the legislature has stated it.

*Smith*, 538 U.S. at 92, 93, 123 S.Ct. at 1147, 155 L. Ed. 2d at 177 (internal citations and quotation marks omitted). " 'Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning.' " *State v. Cheek*, 339 N.C. 725, 728, 453 S.E.2d 862, 864 (1995) (quoting *Burgess v. Your House of Raleigh*, 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990)). However, if

> the language of the statute is ambiguous or lacks precision, or is fairly susceptible of two or more meanings, the intended sense of

it may be sought by the aid of all pertinent and admissible considerations. Proper considerations include the law as it existed at the time of its enactment, the public policy of the State as declared in judicial opinions and legislative acts, the public interest, and the purpose of the act.

*State v. Sherrod*, 191 N.C. App. 776, 779, 663 S.E.2d 470, 472-73 (2008) (internal citations and quotations omitted). "In discerning the intent of the General Assembly, statutes *in pari materia* should be construed together and harmonized whenever possible." *State v. Jones*, 359 N.C. 832, 836, 616 S.E.2d 496, 498 (2005) (citation omitted). "The courts must first ask whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." *Smith* at 93, 123 S.Ct. at 1147, 155 L. Ed. 2d at 177 (citation and internal quotation marks omitted). "It is well settled that statutes dealing with the same subject matter must be construed *in pari materia*, as together constituting one law." *Williams v. Alexander County Bd. of Educ.*, 128 N.C. App. 599, 603, 495 S.E.2d 406, 408 (1998) (citation and quotation marks omitted).

The SBM provisions were enacted by N.C. Sess. Laws 2006-247, § 1(a) which states: "This act shall be known as 'An Act To Protect North Carolina's Children/Sex Offender Law Changes.'" N.C. Sess. Laws 2006-247, § 1(a). The SBM provisions are located in part 5 of Article 27A of Chapter 14 of the General Statutes. Art. 27A of Chapter 14 of the General Statutes is entitled "Sex Offender and Public Protection Registration Programs." The SBM system is required to provide "[t]ime-correlated and continuous tracking of the geographic location of the subject using a global-positioning system based on satellite and other location tracking technology" and "[r]eporting of subject's violations of prescriptive and proscriptive schedule or location requirements. Frequency of reporting may range from once a day (passive) to near real-time (active)." N.C. Gen. Stat. § 14-208.40(c)(1)-(2) (2007).

The sex offender monitoring program monitors two categories of offenders. N.C. Gen. Stat. § 14-208.40(a) (2007). The first category is any offender who is convicted of a reportable conviction defined by N.C. Gen. Stat. § 14-208.6(4) and required to register as a sex offender under Part 3 of Article 27A because he or she is "classified as a sexually violent predator, is a recidivist, or was convicted of an aggravated offense as defined in G.S. § 14-208.6." N.C. Gen. Stat. § 14-208.40(a)(1)

(2007) (effective until Dec. 1, 2008). The second category is any offender who satisfies four criteria: (1) is convicted of a reportable conviction defined by § 14-208.6(4), (2) is required to register under Part 2[1] of Article 27A, (3) has committed an offense involving the "physical, mental, or sexual abuse of a minor," and (4) based on a risk assessment program, "requires the highest possible level of supervision and monitoring." N.C. Gen. Stat. § 14-208.40(a)(2) (2007) (effective until Dec. 1, 2008).

In construing the statute as a whole, we conclude the legislature intended SBM to be a civil and regulatory scheme. This Court has interpreted the legislative intent of Article 27A as establishing "a civil regulatory scheme to protect the public." *See White,* 162 N.C. App. at 193, 590 S.E.2d at 455 (holding that retroactive application of sex offender registration statute does not offend the *ex post facto* clause); *see also State v. Sakobie,* 165 N.C. App. 447, 452, 598 S.E.2d 615, 618 (2004) ("Having previously determined that Article 27A is a civil and not a criminal remedy, this panel is not at liberty to revisit the issue.") (citing *In the Matter of Appeal from Civil Penalty,* 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). By placing the SBM provisions under the umbrella of Article 27A, the legislature intended SBM to be considered part of the same regulatory scheme as the registration provisions under the same article. *See also Smith* at 93, 123 S.Ct. at 1147, 155 L. Ed. 2d at 177 (citation and quotation marks omitted) ("an imposition of restrictive measures on sex offenders adjudged to be dangerous is a legitimate nonpunitive governmental objective and has been historically so regarded").

Defendant argues SBM was intended to be punitive because (1) "the original enacting legislation" included language that the system was to be used as "an intermediate sanction," (2) the statute requires SBM as a condition of probation, parole and post-release supervision; (3) SBM provisions are located in Chapters 14 and 15, both criminal statutes; (4) the district attorney initiates the determination regarding whether an offender is eligible for SBM and (5) the Department of Correction ("DOC") maintains and monitors the SBM system.

---

1. Part 2 is entitled "Sex Offender and Public Protection Registration Program" and applies to offenders convicted of a reportable conviction. N.C. Gen. Stat. § 14-208.7 (2007). Part 3 is entitled "Sexually Violent Predator Registration Program" and applies to an offender classified as a sexually violent predator. N.C. Gen. Stat. § 14-208.20 (2007). Part 3 requires sexually violent predators to register additional information in conjunction with the Part 2 registration requirements. N.C. Gen. Stat. § 14-208.21, -208.22.

STATE v. BARE

[197 N.C. App. 461 (2009)]

## (1) "Intermediate Sanction"

Defendant directs our attention to an Editor's Note to the 2007 version of N.C. Gen. Stat. § 14-208.40 describing the "Global Positioning System" for use "as an intermediate sanction.[2]" Defendant contends including the words "intermediate sanction" expresses the legislature's intent that the purpose of the SBM provisions is punitive. Defendant equates the term "intermediate sanction" with "intermediate punishments" as defined in N.C. Gen. Stat. § 15A-1340.11(6) (2007).

The term "intermediate punishment" is defined as "[a] sentence in a criminal case that places an offender on supervised probation and includes at least one of . . . [six] conditions" enumerated in N.C. Gen. Stat. § 15A-1340.11(6). N.C. Gen. Stat. § 15A-1340.11(6) (2007). At least two other criminal sentencing statutes, N.C. Gen. Stat. §§ 15A-837(a)(5) and 15A-1340.13(h) use the terms "intermediate punishment" and "intermediate sanction" interchangeably. *See* N.C. Gen. Stat. § 15A-837(a)(5), -1340.13(h) (2007). N.C. Gen. Stat. § 15A-837(a)(5) specifically cites to the definition of "intermediate punishment" in N.C. Gen. Stat. § 15A-1340.11(6) and N.C. Gen. Stat. § 15A-1340.13(h) is located within Chapter 15A, Article 81B entitled, "Structured Sentencing of Persons Convicted of Crimes[,]" of the North Carolina General Statutes, the article for which N.C. Gen. Stat. § 15A-1340.11(6) provides definitions. *See* N.C. Gen. Stat. § 15A-837(a)(5), -1340.11(6), 1340.13(h). However, the statutes regarding SBM do not refer to, incorporate, or rely upon the definition of "intermediate punishment" as set forth in N.C. Gen. Stat. § 15A-1340.11(6) in any way related to their use of the term "interme-

---

2. The relevant portion of the Editor's Note reads as follows:

The Department of Correction shall either issue an RFP prior to signing a contract, or with prior approval by the State Chief Information Officer or his designee, enter into a contract through an approved contracting alliance or consortium for a passive and active Global Positioning System. *The system shall be for use as an intermediate sanction* and to help supervise certain sex offenders who are placed on probation, parole, or post-release supervision. If an RFP is issued, the contract shall be awarded by October 1, 2006 for contract terms to begin January 1, 2007. The Department of Correction shall report by November 1, 2006 to the Chairs of the House of Representatives and Senate Appropriations Committees and the Chairs of the House of Representatives and Senate Appropriations Subcommittees on Justice and Public Safety on the details of the awarded contract.

N.C. Sess. Laws 2006-247, § 16; Editor's Note, N.C. Gen. Stat. § 14-208.40 Ann. (2007) (emphasis added). The quoted language does not appear in the Editor's Note to the 2008 version of N.C. Gen. Stat. § 14-208.40. (Interim Supp. Vol. I, 2008)

diate sanction." The use of the term "intermediate sanction" in the Editor's Note of N.C. Gen. Stat. § 14-208.40 is therefore distinct from and unrelated to the term "intermediate punishment" as defined in N.C. Gen. Stat. § 15A-1340.11(6).

The word "sanction" as used in this context is defined by Black's Law Dictionary as "[a] penalty or coercive measure that results from failure to comply with a law, rule, or order." Black's Law Dictionary 1368 (8th ed. 2004). The word "sanction" often appears in cases and statutes in both the civil and criminal context. *See, e.g.*, N.C. Gen. Stat. § 1A-1, Rule 11(a), 26(g), 37(b)(1-2); *State v. Beckham*, 148 N.C. App. 282, 285-86, 558 S.E.2d 255, 257-58 (2002); *see Smith*, 538 U.S. at 100, 123 S.Ct. at 1151, 155 L. Ed. 2d at 181 (comparing the restraints imposed by Alaska's sex offender registration act as being less harsh than "the sanctions of occupational debarment which we have held to be nonpunitive"). For example, this Court refers to the *civil* remedy in N.C. Gen. Stat. § 1-538.2 as a "sanction." *See Beckham*, 148 N.C. App. at 285-87, 558 S.E.2d at 257-58. Furthermore, various "sanctions" are often imposed against parties who violate the North Carolina Rules of Civil Procedure, clearly these "sanctions" are not criminal punishments. *See, e.g.*, N.C. Gen. Stat. § 1A-1, Rule 11(a), 26(g), 37(b)(1). Thus, the words "intermediate sanction" or the word "sanction" does not compel an interpretation that the legislature intended SBM as a punishment.

### (2) Condition of probation

Defendant next contends the SBM provisions were intended to be punitive because "the Legislature required courts to place offenders subject to lifetime satellite-based monitoring on lifetime probation." Defendant also contends the "requirement that the trial court impose monitoring as a condition of probation, parole, and post-release supervision, was consistent with the Legislature's intent that monitoring serve as punishment, since mandatory probation, parole, and post-release supervision have long been deemed 'punishment.' "

Defendant supports this argument by relying on N.C. Gen. Stat. § 14-208.42. Prior to a 2007 amendment the words "unsupervised probation" were included in the statute, "Lifetime registration offenders required to submit to satellite-based monitoring for life *and to continue on unsupervised probation upon completion of sentence*." (Emphasis added). N.C. Sess. Laws 2006-247, § 15(a) (codified as N.C. Gen. Stat. § 14-208.35 (2006)). In 2007, the General Assembly amended the provision to read: "Offenders required to submit to

satellite-based monitoring required to cooperate with Department upon completion of sentence." N.C. Gen. Stat. § 14-208.42 (2007); N.C. Sess. Laws 2007-213, § 5; N.C. Sess. Laws 2007-484, § 42(b). The text of N.C. Gen. Stat. § 14-208.42 originally stated:

Notwithstanding any other provision of law, when the court sentences an offender who is in the category described by G.S. 14-208.40(a)(1) for a reportable conviction as defined by G.S. 14-208.6(4), and orders the offender to enroll in a satellite-based monitoring program, *the court shall also order that the offender, upon completion of the offender's sentence and any term of parole, post-release supervision, intermediate punishment, or supervised probation that follows the sentence, continue to be enrolled in the satellite-based monitoring program for the offender's life and be placed on unsupervised probation* unless the requirement that the person enroll in a satellite-based monitoring program is terminated pursuant to G.S. 14-208.43.

N.C. Sess. Laws 2006-247, § 15(a) (emphasis added).

Subsequently, the General Assembly removed the language referring to "unsupervised probation" in the title of N.C. Gen. Stat. § 14-208.42. N.C. Sess. Laws 2007-213, § 5. The statute specifies enrollment in SBM is to continue after "completion of the offender's sentence and any term of parole, post-release supervision, intermediate punishment, or supervised probation that follows the sentence." N.C. Gen. Stat. § 14-208.42 (2007). The statute does not require an offender who is subject to SBM to be on "parole, post-release supervision, intermediate punishment, or supervised probation," (although SBM may be imposed during these time periods) but that SBM may be imposed after completion of these forms of punishment. N.C. Gen. Stat. § 14-208.42 (2007). Therefore, the fact that SBM can be one of the conditions imposed upon an offender who has not completed his probation, parole, or post-release supervision does not mean that SBM alone is intended as punitive.

The sex offender registration requirements may also be imposed as a condition to probation or post-release supervision. *See* N.C. Gen. Stat. § 15A-1343(b2)(1) (2007) (registration "as required by N.C. Gen. Stat. § 14-208.7" is included as a "special condition of probation"); N.C. Gen. Stat. § 15A-1368.4(b1)(1) (2007). In *Smith*, the United States Supreme Court examined whether registration requirements for sex offenders were parallel to supervised release or probation, which are punishments for crime. 538 U.S. at 101-02, 123 S.Ct. at 1152,

155 L. Ed. 2d at 182. The Supreme Court distinguished the registration requirements from conditions imposed by probation because offenders were still "free to move where they wish and to live and work as other citizens with no supervision." *Id.* While SBM results in electronic monitoring of an offender's whereabouts, the record does not indicate that it restricts an offender's liberty in matters such as where to live and work. SBM is therefore similar to registration requirements in this regard and is distinguishable from probation, parole, and post-release supervision. *See id.*

### (3) Location of SBM provisions

As to defendant's next argument, the fact that the SBM provisions are codified in Chapter 14 entitled "Criminal Law," does not "in and of itself transform [a] nonpunitive, civil regulatory scheme into a criminal one." *White,* 162 N.C. App. at 193-94, 590 S.E.2d at 455 (quoting *State v. Mount,* 317 Mont. 481, 491, 78 P.3d 829, 837 (2003)).

### (4) Involvement of District Attorney

Defendant contends the legislature chose to "place[] the responsibility for initiating eligibility determinations on the District Attorney for offenders awaiting sentencing" which evidences an intent the SBM provision serve as punishment. We disagree. Involvement of the district attorney in SBM determination hearings does not by itself supercede the declared intent of the legislature. District attorneys are required to perform a number of nonpunitive statutory duties. *See* N.C. Gen. Stat. § 52C-3-308 (2007) (duty of district attorney to represent obligee in proceedings under the Uniform Interstate Family Support Act); N.C. Gen. Stat. § 122C-268.1 (2007) (district attorney may represent the State in civil commitment hearings following a respondent's involuntary commitment upon a verdict of not guilty by reason of insanity).

### (5) Involvement of the DOC

Defendant also argues involvement of the DOC in eligibility determinations for offenders who are released indicates a punitive intent by the legislature. We disagree.

Defendant cites to N.C. Gen. Stat. § 14-208.40A, -208.40B in support of this argument. These SBM provisions support our conclusion that imposition of SBM was intended to protect the public and not intended to punish the offender. Where an offender commits an offense that involved physical, mental or sexual abuse of a minor but

the offense is not aggravated and the offender is not a recidivist, the DOC performs a risk assessment. N.C. Gen. Stat. § 14-208.40B(c) (effective until Dec. 1, 2008). The trial court is then required to determine whether "based on the Department's risk assessment, the offender requires the highest possible level of supervision and monitoring." N.C. Gen. Stat. § 14-208.40B(c) (effective until Dec. 1, 2008). Offenders who have been convicted of a reportable conviction and are recidivists, as well as those classified as sexually violent predators or those convicted of aggravated offenses, are the type of offenders who would receive a high risk assessment. N.C. Gen. Stat. § 14-208.40B(c) (effective until Dec. 1, 2008). Use of the words "risk assessment" reveals the legislature's concern that these offenders pose a greater risk to the public. The fact that the DOC is involved in the risk assessment does not override the legislature's stated intent. *Smith*, 538 U.S. at 93, 123 S.Ct. at 1147, 155 L. Ed: 2d at 176.

Defendant has failed to direct us to any considerations which would support his contention that the General Assembly intended that SBM to be a criminal punishment. Therefore, in accord with our prior cases regarding sex offender registration, we again conclude that Article 27A of Chapter 14 of the North Carolina General Statutes, entitled "Sex Offender and Public Protection Registration Programs[,]" which now includes "Part 5. Sex Offender Monitoring[,]" was intended as "a civil and not a criminal remedy[.]" *Sakobie*, 165 N.C. App. at 452, 598 S.E.2d at 618 (citation omitted).

B. Punitive in Purpose or Effect

[2] Although SBM was created as a civil regulatory scheme, we

recognize that a civil label is not always dispositive, [and] we will reject the legislature's manifest intent only where a party challenging the statute provides the clearest proof that the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil[.]

*Kansas v. Hendricks*, 521 U.S. 346, 361, 117 S.Ct. 2072, 2082, 138 L. Ed. 2d 501, 515 (1997) (internal citations, quotation marks, and brackets omitted). We must therefore further examine whether the statutory scheme is "so punitive either in purpose or effect as to negate the State's intention to deem it civil." *Smith* at 92, 123 S.Ct. at 1147, 155 L. Ed. 2d at 176 (citation, quotation marks, and brackets omitted). In our consideration of SBM's purpose and effects, we look to

STATE v. BARE

[197 N.C. App. 461 (2009)]

whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose.

*Id.* at 97, 123 S.Ct. at 1149, 155 L. Ed. 2d at 180. These "factors are designed to apply in various constitutional contexts . . . [and] are neither exhaustive nor dispositive, but are useful guideposts[.]" *Smith* at 97, 123 S.Ct. at 1149, 155 L. Ed. 2d at 179-80 (internal citations and quotation marks omitted). We now consider each of defendant's arguments as to why SBM is punitive in purpose and effect.

### (1) Historically Regarded as Punishment

Defendant contends wearing the SBM device is akin to a modern-day shame sanction. Shame sanctions are historically regarded as punishment. *Smith*, 538 U.S. at 98, 123 S.Ct. at 1150, 155 L. Ed. 2d at 180. However, "dissemination of truthful information in furtherance of a legitimate governmental objective" is not traditionally regarded as punishment. *Id.* at 98-99, 123 S.Ct. at 1150, 155 L. Ed. 2d at 181 (*see also White*, 162 N.C. App. at 194, 590 S.E.2d at 456). In *Smith*, the Supreme Court noted the publicity and resulting stigma of the sex offender registry is not "an integral part of the objective of the regulatory scheme." *Id.*

In 2007, the Sixth Circuit examined whether the "Tennessee Serious and Violent Sex Offender Monitoring Pilot Project Act" ("Monitoring Act") which "authorized the Tennessee Board of Probation and Parole . . . to subject a convicted sexual offender to a satellite-based monitoring program for the duration of his probation" violated the *ex post facto* clause. *Bredesen*, 507 F.3d at 1000. Doe pled guilty to a number of offenses between 1995 and 2004 under the Sex Offender Act. *Id.* In 2004, the Tennessee legislature repealed the Sex Offender Act and replaced it with the Registration Act. *Id.* at 1001. Under the new code, Doe was re-classified as a violent sexual offender and required to wear a global positioning device for the rest of his life. *Id.* The *Bredesen* court applied the *Mendoza-Martinez* factors set forth in *Smith v. Doe* and concluded Tennessee's satellite-based monitoring program was not so punitive in effect to override its nonpunitive purpose. *Id.* at 1005-07.

We find the analysis in *Bredesen* helpful in the case at bar. In *Bredesen*, Doe alleged the physical nature of the device rendered it

visible to any onlooker because the global positioning satellite device was relatively large and worn outside "his person." *Id.*, 507 F.3d at 1002. The *Bredesen* court concluded the Monitoring Act's registration, reporting and surveillance requirements are "not of a type that we have traditionally considered as a punishment." The lifetime registration and monitoring of sex offenders is less harsh than other civil penalties historically considered nonpunitive, such as revocation of a professional license and preclusion from certain employment. *Id.* at 1005 (citing *Smith*, 538 U.S. at 100, 123 S.Ct. at 1140. The court also noted that the device was only six inches by 3.25 inches by 1.75 inches and weighed less than a pound. *Id.* The court noted the appearance of the device was not dissimilar to other electronic devices such as a walkie-talkie or a personal organizer. *Id.* More importantly, there was no evidence presented to suggest an observer would recognize the device as one that monitored sex offenders. *Id.*

Here, defendant contends the SBM device is a modern day shame sanction because the "bulky" device is a physical, visible sign notifying the public that the wearer committed a sex offense, unlike the sex offender registry. However, defendant has presented no affidavits or other evidence demonstrating that the device is recognizable as a monitor assigned to sex offenders as opposed to an ordinary electronic device such as a cell phone, personal data assistant, or walkie-talkie.

We conclude that based on the record before us, wearing an electronic monitoring device is no more stigmatizing than the public registration of sex offenders required by the sex offender registry. *See White*, 162 N.C. App. at 194, 590 S.E.2d at 456 (concluding public disclosure of sex offender registry is not designed to humiliate and punish).

### (2) Affirmative Disability or Restraint

Defendant contends wearing an electronic tracking device "at all times" and being required to cooperate with the DOC in order to ensure the device is working properly pursuant to N.C. Gen. Stat. § 14-208.42 imposes a punitive restraint on defendant's daily activities. We disagree.

In support of his argument, defendant cites N.C. Gen. Stat. § 14-208.42, which specifically authorized the DOC to contact offenders for the limited purpose of enrollment and maintenance of the SBM device. The statute states, in relevant part:

The Department shall have the authority to have contact with the offender at the offender's residence or to require the offender to appear at a specific location as needed for the purpose of enroll-ment, to receive monitoring equipment, to have equipment examined or maintained, and for any other purpose necessary to complete the requirements of the satellite-based monitoring program. The offender shall cooperate with the Department and the requirements of the satellite-based monitoring program until the offender's requirement to enroll is terminated and the offender has returned all monitoring equipment to the Department.

N.C. Gen. Stat. § 14-208.42 (2007). It is clear that defendant must meet with an officer for maintenance of the monitoring device. However, all we can glean from the record and the statute is that an offender who is enrolled in SBM must meet at some unknown frequency and location with an officer who is charged with the maintenance of the transmitting unit. Under these facts, defendant has not shown that cooperation with the department for the purposes of maintaining the SBM device is any more of an affirmative restraint than the registration requirements.

Defendant also argues the device is "bulky and cumbersome" and "hindered his ability to obtain employment." We first note that although the defendant characterizes the tracking device as "bulky and cumbersome," the record does not contain any information as to the size of the device or any information as to the manner of its attachment to defendant. Pursuant to the North Carolina Rules of Appellate Procedure, Rule 9, this Court's "review is solely upon the record on appeal, the verbatim transcript of proceedings, if one is designated, constituted in accordance with this Rule 9, and any items filed with the record on appeal pursuant to Rule 9(c) and 9(d)." N.C. R. App. P. 9(a) (2008). "The appellate courts can judicially know only what appears of record." *Jackson v. Housing Authority of High Point*, 321 N.C. 584, 586, 364 S.E.2d 416, 417 (1988).

In addition, defendant argues that the device has "hindered his ability to obtain employment." However, defendant did not present any testimony or evidence at his determination hearing as to his inability to obtain employment. Defendant's counsel argued to the trial court that the device had prevented defendant from obtaining two jobs. Specifically, defendant's counsel argued that because the monitor cannot be cleaned and would be exposed to unsanitary conditions it restricted defendant from obtaining a job at Tyson Foods. Defense counsel also argued the device posed a safety hazard for an

assembly job at Hosiery Mills because it would be exposed to belts and machinery. However, the statements of counsel are not evidence. "[I]t is axiomatic that the arguments of counsel are not evidence." *State v. Collins*, 345 N.C. 170, 173, 478 S.E.2d 191, 193 (1996) (citation omitted). Furthermore, even if defense counsel's statements could be considered as evidence, it is not the function of this Court to make findings of fact. The trial court made no findings of fact as to defendant's ability to obtain employment while on SBM, nor could the court make any such findings in the absence of any testimony or evidence. Based upon the record before us, we cannot determine the restraints which would be imposed upon defendant by SBM are anything more than "minor" or "indirect" restraints and thus they do not rise to the level of punishment. *White*, 162 N.C. App. at 195, 590 S.E.2d at 456 (citing *Smith v. Doe*, 538 U.S. at 102, 123 S.Ct. at 1152, 155 L. Ed. 2d at 183 (recognizing sex offender registration requirement imposes an indirect restraint but holding it is not a punitive restraint)); *Kansas v. Hendricks*, 521 U.S. at 363, 117 S.Ct. at 2083, 138 L. Ed. 2d at 516 (concluding that despite the fact a regulatory scheme resulting in the indefinite civil confinement of a person diagnosed as a pedophile imposes an affirmative restraint, an affirmative restraint on a defendant's freedom does not automatically lead to the presumption that such a restraint is punishment); *see also Bredesen*, 507 F.3d at 1005 (holding despite restrictions on his daily activities as a result of wearing the GPS device, because the Monitoring Act did not increase the length of his incarceration, or prevent him from changing jobs, residences or traveling, it was not a punitive restraint).

### (3)  Promotes Traditional Aims of Punishment

Defendant also argues SBM serves a deterrent purpose, which is one of the traditional aims of punishment.

We agree that the SBM provisions could have a deterrent effect. Presumably, sex offenders would be less likely to repeat offenses since they would be aware their location could be tracked and it would be easier to catch them. However, this factor alone is not enough to override a nonpunitive purpose. *See Smith*, 538 U.S. at 102, 123 S.Ct. at 1152, 155 L. Ed. 2d at 183 (reasoning that "[a]ny number of governmental programs might deter crime without imposing punishment. To hold that the mere presence of a deterrent purpose renders such sanctions criminal . . . would severely undermine the Government's ability to engage in effective regulation" (internal citations and quotation marks omitted)).

## (4) Rational Connection to Nonpunitive Purpose

A statute's "rational connection to a nonpunitive purpose is a most significant factor in our determination that the statute's effects are not punitive." *Smith*, 538 U.S. at 102, 123 S.Ct. at 1152, 155 L. Ed. 2d at 183 (internal quotation marks omitted). "A statute is not deemed punitive simply because it lacks a close or perfect fit with the nonpunitive aims it seeks to advance." *Id.* at 103, 123 S.Ct. at 1152, 155 L. Ed. 2d at 183.

Here, as in *State v. White*, the defendant does not contest that the SBM provisions have a rational connection to a non-punitive purpose. 162 N.C. App. at 196, 590 S.E.2d at 457. The ability to track the location of individuals who have committed sex offenses against minors or other aggravated sex offenses has a rational connection to the purpose of protecting the public. *See also Bredesen*, 507 F.3d at 1006 (holding the Tennessee legislature could rationally conclude sex offenders pose a high risk of recidivism and that electronic monitoring could reduce the risk of recidivism and protect the public without punishing offenders).

## (5) Excessive in Relation to Nonpunitive Purpose

Defendant also argues the SBM provisions are excessive because wearing a monitor cannot prevent an offender from re-offending.

"The excessiveness inquiry of our *ex post facto* jurisprudence is not an exercise in determining whether the legislature has made the best choice possible to address the problem it seeks to remedy. The question is whether the regulatory means chosen are reasonable in light of the nonpunitive objective." *Smith*, 538 U.S. at 105, 123 S.Ct. at 1154, 155 L. Ed. 2d at 185. "The proper analysis considers whether the regulations required are excessive—in other words, whether the extent and duration of those requirements are greater than necessary to meet the legislature's purpose." *White*, 162 N.C. App. at 197, 590 S.E.2d at 457.

The nonpunitive purpose is to supervise certain offenders whom the legislature has identified as posing a particular risk to society. The question is whether continuous SBM for the remainder of an offender's life is reasonable in light of the objective to protect the public. The SBM restrictions are not imposed on all sex offenders, but only those whom the legislature has designated as posing a particular risk. In addition, although the trial court initially imposed SBM for the

remainder of defendant's natural life, defendant may request termination of SBM under N.C. Gen. Stat. § 14-208.43. The Post-Release Supervision and Parole Commission ("the Commission") has authority to terminate satellite-based monitoring upon request of the first category of offender who has served his sentence and completed any period of probation, parole, or post-release supervision as part of the sentence, if the offender has not received any additional reportable convictions during the period of satellite-based monitoring. N.C. Gen. Stat. § 14-208.43 (2007). SBM will also be terminated if the offender has been released from the requirement to register under Part 2 of Article 27A. N.C. Gen. Stat. § 14-208.43(d1). The Commission does not have authority to consider or terminate a monitoring requirement for an offender in the second category. N.C. Gen. Stat. § 14-208.43(e). The trial court determined defendant falls under the first category of offender under N.C. Gen. Stat. § 14-208.40(a)(1).

The United States Supreme Court has held that a much more restrictive Kansas statute, which established "a civil commitment procedure for the long-term care and treatment of the sexually violent predator" was not excessive, given its purpose of protection of the public by holding a person until his mental abnormality no longer causes him to be a threat to others. *Kansas v. Hendricks*, 521 U.S. at 351-52, 117 S.Ct. at 2077, 138 L. Ed. 2d at 509. Accordingly, based on the record before us, we conclude that imposition of continuous SBM of recidivists or violent sex offenders is not unreasonable in light of the statute's purpose.

## C. Conclusion

We hold that the restrictions imposed by the SBM provisions do not negate the legislature's expressed civil intent. Defendant has failed to show that the effects of SBM are sufficiently punitive to transform the civil remedy into criminal punishment. Based on the record before us, retroactive application of the SBM provisions do not violate the *ex post facto* clause.

## II. No Contest Plea Arrangement

[3] Defendant makes two arguments regarding his 2002 no contest plea arrangement. First, defendant argues the trial court violated N.C. Gen. Stat. § 15A-1022 when it failed to inform him that imposition of SBM would be a direct consequence of his plea. We disagree.

N.C. Gen. Stat. § 15A-1022 provides in relevant part:

(a) Except in the case of corporations or in misdemeanor cases in which there is a waiver of appearance under G.S. 15A-1011(a)(3), a superior court judge may not accept a plea of guilty or no contest from the defendant without first addressing him personally and:

. . . .

(6) Informing him of the maximum possible sentence on the charge for the class of offense for which the defendant is being sentenced, including that possible from consecutive sentences, and of the mandatory minimum sentence, if any, on the charge;

N.C. Gen. Stat. § 15A-1022(a) (2007).

Defendant's argument is predicated on the assumption that SBM is a punishment. Because we determined the SBM provisions are not punitive, N.C. Gen. Stat. § 15A-1022(a) is not implicated.

Defendant next argues his plea is rendered involuntary because imposition of SBM was a direct consequence of his no contest plea. Our case law requires that "[a]lthough a defendant need not be informed of all possible indirect and collateral consequences, the plea nonetheless must be 'entered by one fully aware of the *direct consequences*, including the actual value of any commitments made to him by the court. . . .' " *State v. Bozeman,* 115 N.C. App. 658, 661, 446 S.E.2d 140, 142 (1994) (quoting *Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L. Ed. 2d 747, 760 (1970) (emphasis added)). "Direct consequences" of a plea "are those that have a definite, immediate, and largely automatic effect on the range of the defendant's punishment[,]" and a statute and the due process clause entitle the defendant to be apprised of them. *State v. Smith,* 352 N.C. 531, 550-51, 532 S.E.2d 773, 786 (2000). Direct consequences include mandatory minimum sentences or additional terms of imprisonment as a result of the guilty plea. *Bozeman,* 115 N.C. App. at 661, 446 S.E.2d at 142-43 (holding mandatory minimum sentences are a direct consequence of a guilty plea); *State v. McNeill,* 158 N.C. App. 96, 104, 580 S.E.2d 27, 31 (2003) (additional terms of imprisonment resulting from defendant's guilty plea to habitual offender status were a direct consequence). However, "[t]he imposition of a sentence or sentences may have a number of collateral consequences, and a plea of guilty is not rendered involuntary in a constitutional sense if the defendant is not informed of all of the possible indirect and collateral consequences." *Strader v. Garrison,* 611 F.2d

61, 63 (4th Cir. 1979) (holding parole eligibility status is a collateral consequence of a guilty plea).

We disagree that lifetime satellite-based monitoring was an automatic result of defendant's no contest plea. "When an offender is convicted of a reportable conviction as defined by N.C. Gen. Stat. § 14-208.6(4), during the sentencing phase," the trial court is required to separately determine whether an offender meets the criteria subjecting him to SBM. N.C. Gen. Stat. § 14-208.40A. If there has been no determination by the court whether an offender is required to enroll in SBM, the DOC makes the initial determination, schedules a hearing, notifies the offender, and the trial court determines in a separate hearing whether the offender falls under one of the categories subjecting him to SBM. N.C. Gen. Stat. § 14-208.40B (2007). Therefore, imposition of SBM was not an automatic result of his no contest plea, unlike a mandatory minimum sentence or an additional term of imprisonment. *See Cuthrell v. Patuxent Institution*, 475 F.2d 1364, 1365, 1367 (1973) (although defendant's guilty plea subjected him to the possibility of civil commitment, because the purpose of the commitment was not punishment and it occurred after a separate civil commitment hearing, civil commitment was not a direct and automatic consequence of defendant's guilty plea). This assignment of error is overruled.

Affirmed.

Judges STEELMAN and STROUD concur.